**Robert D. FROHARDT and Diana L. Frohardt, Appellants–Plaintiffs,**

**v.**

**Booker T. BASSETT, Hubcap City, B&B Plastics, Kelly's Shell and Penske Truck Leasing Co., L.P., Appellees– Defendants.**

No. 49A02–0204–CV–324.

Court of Appeals of Indiana.

May 13, 2003.

Frederick D. Emhardt, Plews Shadley Racher & Braun, Indianapolis, IN, Attorney for Appellants.

Bryce H. Bennett, Jr., Pamela G. Schneeman, Riley Bennett & Egloff, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Plaintiffs Robert and Dianna Frohardt (collectively, the Frohardts) appeal from the trial court's grant of partial summary judgment in favor of Appellees–Defendants Booker T. Bassett (Bassett), B&B Plastics (B&B), Kelly's Shell, and Penske Truck Leasing Co., L.P., (Penske) (collectively, Appellees–Defendants).

We affirm in part, and reverse and remand in part.

### ISSUE

The Frohardts raise five issues on appeal, which we consolidate and restate as: whether the trial court erred in its grant of summary judgment in favor of Penske, Kelly's Shell and B&B, and partial summary judgment in favor of Basset.

### FACTS AND PROCEDURAL HISTORY

The facts in the light most favorable to the Frohardts show that at approximately 5:30 p.m. on October 1, 1997, Robert Frohardt (Robert) was in Indianapolis, driving eastbound on I–70 in his Nissan Pulsar (Pulsar). Due to congested traffic, Robert slowed to a stop. Bassett, who was driving a rental truck immediately behind Robert, failed to stop in time and rear-ended Robert's Pulsar. Robert was injured in the crash, leaving him unable to work as an over-the-road truck driver.

The rental truck driven by Bassett was owned by Penske. Bassett rented the truck earlier that same day pursuant to a one-day rental contract from Kelly's Shell,

an authorized Penske rental agent. Bassett was hired by B&B to rent the truck to transport plastic hubcap centers from a storage facility on the west side of Indianapolis to a shipping/receiving facility located on the east side of the city. B&B was a sole proprietorship engaged in selling the plastic hubcap centers throughout the United States.[1] B&B's only full-time employee, Bill Ball (Ball), hired Bassett on occasion to do odd jobs for B&B. Ball called upon Bassett for approximately thirty days of work scattered over a one-year period prior to the accident. Approximately 90% of the work Bassett did for B&B involved washing hubcap centers. However, he transported hubcaps locally via rental truck on one to four other occasions. B&B paid Bassett on an hourly basis for his work.

On October 1, 1997, Bassett arrived at Kelly's Shell to pick up the Penske rental truck, and was assisted by Bruce Kelly (Kelly), owner of Kelly's Shell. Bassett presented Kelly with a valid Indiana operator's license. Kelly did not question Bassett about his health or request a medical certification prior to renting him the truck. Likewise, Bassett was not required by Kelly to take a test or demonstrate his driving ability before renting the truck. Kelly prepared the rental agreement, indicating that Bassett was renting a twenty-five foot GMC truck with a declared gross vehicle weight rating of 25,950 pounds. Prior to Bassett's departure, Kelly gave him "the safety chat," which included common-sense safety tips on driving a truck of this size. (Appellant's App. pp. 214–15). Subsequently, Bassett took possession of the truck and drove away. As stated previously, Bassett collided with Robert later that afternoon.

The Frohardts filed their original Complaint for Damages on May 20, 1999. On September 1, 1999, they filed their First Amended Complaint for Damages. A hearing on the motion was scheduled for May 5, 2000. On March 15, 2000, Appellees–Defendants filed their first Motion for Summary Judgment. Due to a dispute concerning the Frohardts' request to obtain additional discovery to contest the summary judgment motion, the hearing was rescheduled for June 19, 2000. However, on May 11, 2000, the Frohardts responded to the motion for summary judgment, cross-moved for summary judgment and filed an Indiana Trial Rule 56(F) motion. Appellees–Defendants objected to the Frohardts' motions on the basis that the Frohardts' opposition to summary judgment was limited in part by their amended complaint. On June 20, 2000, the Frohardts moved the trial court to file their Second Amended Complaint for Damages. On July 10, 2000, their motion was granted and the trial court also issued an order, compelling discovery from Appellees–Defendants.

Also on July 10, 2000, the Frohardts filed their Second Amended Complaint for Damages (Complaint). In the "Facts" section of their Complaint, the Frohardts assert the following claims against Appellees–Defendants:

16. [Bassett] lacked proper certifications and prerequisites to legally operate the truck. Due to his medical conditions and educational level, he would not have been able to obtain these certifications or prerequisites.

. . . .

---

1. B&B was in the process of closing its business operations at the time of the collision and ceased operations in January of 1998.

19. Penske insufficiently educated, supervised and trained its agents including Kelly.

20. Penske's corporate safety systems are and were insufficient to protect the driving public from incompetent and unqualified truck drivers.

. . . .

22. [Bassett] violated common law, statutory and regulatory standards of care in causing the crash.

23. [B&B] violated common law, statutory and regulatory duties in retaining, training and enlisting Bassett to transport property and is liable for the acts of [Bassett].

24. Penske [and] Kelly's Shell . . . violated common statutory and regulatory law duties in renting the truck to [Bassett] who was not legally, physically or mentally qualified to drive the truck.

25. On information and belief, Penske [and] Kelly's Shell . . . are negligent, reckless, grossly negligent, or willful and wanton in that they engage in a pattern of renting large trucks to unqualified drivers for profit.

26. Penske is liable for the acts of its authorized agent, Kelly's Shell.

27. Penske is guilty of negligence, recklessness, gross negligence or willful and wanton conduct in its training of its agents, retention of its agent, [Kelly], entrustment of that truck to [Kelly] and [Bassett], and its general operations and safety procedures.

28. Penske, independently and through its agent, violated common statutory and regulatory law duties in

renting the truck to [Bassett] who was not legally, physically or mentally qualified to drive the vehicle.

29. Penske is negligent, reckless, grossly negligent or willful and wanton for engaging in a pattern of renting trucks to unqualified drivers.

(Appellant's App. pp. 74–6).

On November 9, 2000, the trial court held a status conference. During the conference, the judge, who planned to retire at the end of the calendar year, declined to enforce his July 10, 2000 Order compelling Appellees–Defendants to produce discovery. Instead, he decided to leave the issue for his successor and set the case for hearing on January 22, 2001, in front of his successor.

On January 22, 2001, the new judge met with the parties and requested that they refile their motions for discovery and summary judgment. On September 27, 2001, Appellees–Defendants filed their Second (Renewed) Motion for Summary Judgment.[2] Following further discovery requests, the Frohardts responded to the motion for summary judgment on November 20, 2001. They also filed a motion pursuant to T.R. 56(F).

On January 7, 2002, a hearing on the motion for summary judgment was held. On March 21, 2002, the trial court granted full summary judgment in favor of Penske, Kelly's Shell, and B&B, and partial summary judgment in favor of Bassett regarding all issues except Bassett's ordinary negligence in causing the subject collision.

The Frohardts now appeal. Additional facts will be supplied as necessary.

---

**2.** We note that Appellees–Defendants' motion was actually a request for partial summary judgment, in that they specifically left for trial the issue of the Frohardts' claim of ordinary negligence against Bassett.

## DISCUSSION AND DECISION

### I. Standard of Review

In reviewing the propriety of a trial court's ruling of summary judgment, we apply the same standard as the trial court. *Schoknecht v. Hasemeier*, 735 N.E.2d 299, 301 (Ind.Ct.App.2000). We do not reweigh the evidence designated by the parties. *Id.* Instead, we liberally construe the evidence in the light most favorable to the non-moving party. *Id.* Summary judgment is appropriate only if the pleadings and evidence show: 1) the absence of a genuine issue of material fact, and 2) the moving party is entitled to judgment as a matter of law. *Id.* at 301–02. A defendant in a negligence action may obtain summary judgment by demonstrating that the undisputed material facts negate at least one element of the plaintiff's claim. *Kahrs v. Conley*, 729 N.E.2d 191, 194 (Ind. Ct.App.2000), *trans. denied.* On appeal, summary judgment will be affirmed if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. *Figg v. Bryan Rental, Inc.*, 646 N.E.2d 69, 71 (Ind.Ct.App.1995), *trans. denied.* A trial court's grant of summary judgment is "clothed with a presumption of validity." *Id.* Here, the parties are in agreement as to the relevant facts. However, they disagree as to the inferences to be drawn from those facts.

### II. Negligence Per Se

#### A. State Statutory Violations

In their Complaint, the Frohardts contend that Penske and Kelly's Shell violated statutory duties with regard to the rental and operation of the truck and that those violations led directly to the Frohardts' injuries. Under Indiana law, an unexcused or unjustified violation of a duty dictated by statute is negligence per se. *Town of Montezuma v. Downs*, 685 N.E.2d 108, 112 (Ind.Ct.App.1997) *trans.* denied. Specifically, the Frohardts contend that Indiana law required Bassett to have a chauffeur's license to rent and operate the Penske truck, and that Penske and Kelly's Shell allowing Bassett to rent the truck with only an operator's license constitutes negligence per se.

Indiana Code section 9–24–1–2 requires an individual to have a valid chauffeur's license to operate a motor vehicle as a chauffeur upon an Indiana highway. "Chauffeur" is statutorily defined in pertinent part as "a person . . . (2) operating a motor vehicle registered as having a gross weight of sixteen thousand (16,000) pounds or more for the purpose of transporting property for hire." I.C. § 9–13–2–21(a)(2). Central to the Frohardts' allegation is the meaning of the term "for hire," which is not defined by statute, and whether Bassett provided "for-hire" carriage for B&B.

In their motion for summary judgment, Appellees–Defendants contend that "for hire," as used in the statutory definition of "chauffeur," refers only to people who make the transportation of property their regular or primary business. In support of their contention, Appellees–Defendants rely on *Kelly v. Finney*, 207 Ind. 557, 194 N.E. 157 (Ind.1935). *Kelly* involves an action challenging the constitutionality of a state tax imposed on the owners of motor vehicles for hire used in transporting property over public highways. In emphasizing the difference between for-hire transportation of property and private transportation of property, the *Kelly* court set forth the following definitions:

> The one who uses the highways for the transportation of freight for hire *makes the highway his place of business and an essential part of it,* while the one who uses the highway in the transportation of his own property uses it as an incident to some other business.

*Kelly,* 207 Ind. at 567, 194 N.E. at 162 (emphasis added).

In the present case, the undisputed evidence shows that Bassett only transported B&B's property via rental truck on one to four other occasions. Therefore, Appellees–Defendants argue that, because Bassett did not make the highway his place of business or even an essential part of it, he is not "a person ... transporting property for hire." *See* I.C. § 9–13–2–21(a)(2). Consequently, Appellees–Defendants contend that Bassett is not a "chauffeur," as defined by statute, and was thus not required by law to possess a chauffeur's license.

Conversely, the Frohardts contend that "for hire," as used in I.C. 9–13–2–21(a)(2), simply means that the goods of another are transported for a fee. Consequently, the Frohardts assert that, because, on the day of the accident, "Bassett's primary purpose was to transport goods that were not his for compensation[,] .... he was transporting goods 'for hire'" and thus required by law to possess an Indiana chauffeur's license pursuant to I.C. 9–13–2–21(a)(2). (Appellant's App. p. 317). In support of their interpretation of the words "for hire," as used in the statutory definition of "chauffeur," the Frohardts rely on *Smith v. State,* 199 Ind. 217, 222, 156 N.E. 513, 514–15 (Ind.1927), and *Red Ball Motor Freight, Inc. v. Shannon,* 377 U.S. 311, 312, 84 S.Ct. 1260, 1261, 12 L.Ed.2d 341, 342 (1964).

*Smith* is a 1927 case wherein the criminal charges against the defendants include unlawfully receiving white mule whiskey from "a common and other carrier." *Smith,* 199 Ind. at 219, 156 N.E. at 513. The *Smith* court defines "carrier" as "one

(whether a single person, a group of persons, or a corporation) employed in or engaged *in the business* of carrying goods for others for hire." *Id.* at 514 (emphasis added). The Frohardts assert that *Smith* demonstrates that a single person may be a carrier who is engaged in the business of carrying goods for others for hire.

In *Red Ball Motor Freight (Red Ball),* the United States Supreme Court applies the primary business test[3] to buy-and-sell arrangements, wherein "the carrier 'buys' property at a shipping point, transports it to a delivery point and there 'sells' it to the real purchaser, the 'profit' to the carrier amounting to the price of the transportation between the two points." *Red Ball Motor Freight,* 377 U.S. at 314–15, 84 S.Ct. at 1262. *Red Ball* distinguishes a "for-hire" carrier from a "private" carrier by explaining that, in order to be considered "for hire," a carrier's primary business must be supplying transportation for compensation. *Id.*

Appellees–Defendants argue that, *Smith* and *Red Ball* actually demonstrate that "for hire," as used in the statutory definition of "chauffeur," refers only to people who make the transportation of property their regular or primary business. We agree. As used in the context of *Smith* and *Red Ball,* as well as *Kelly,* we find that the meaning of the words "for hire" goes beyond a person transporting goods on occasion for compensation. Because the relevant facts are not in dispute, the construction of the statute presents a pure question of law for which summary judgment is appropriate. *Indiana Patient's Compensation Fund v. Anderson,* 661 N.E.2d 907, 908 (Ind.Ct.App.1996), *trans. denied.*

---

**3.** The primary business test is applied to determine whether a carrier is for hire or private. Here, we are considering the statutory meaning of the words "for hire" to determine whether Bassett was a chauffeur under Indiana law. Consequently, application of the primary business test is not appropriate in this case.

Accordingly, we find that the designated evidence supports the conclusion that Bassett was not required to possess an Indiana chauffeur's license at the time he rented the Penske truck. Therefore, summary judgment was appropriate with regard to the Frohardts' claims that Penske and Kelly's Shell were negligent per se in renting the truck to Bassett even though he did not possess a chauffeur's license.

### B. Federal Motor Carrier Safety Regulations

■ Additionally, the Frohardts contend that Penske, Kelly's Shell and Bassett were negligent per se in that they violated Federal Motor Carrier Safety Regulations (FMCSR). The Frohardts argue that Penske and Kelly's Shell are "motor carriers" as defined in the FMCSR, which states in pertinent part:

> Motor carrier means a for-hire motor carrier or a private motor carrier. The term includes a motor carrier's agents, officers and representatives as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories. For purposes of subchapter B, *this definition includes the terms employer*, and exempt motor carrier.

49 C.F.R. § 390.5 (emphasis added). The Frohardts deduce that, because this definition includes the term "employer" and "employer" is defined in § 390.5 as "any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it," Penske and Kelly's Shell fall within the purview of the FMCSR. *Id.* We find the Frohardts' contention tenuous at best. Neither Penske nor Kelly's Shell

employed Bassett in any capacity as a driver for B&B.

Further, the FMCSR apply to "every person who operates a commercial motor vehicle, as defined in § 383.5 .... in interstate or intrastate commerce and to all employers of such persons." 49 C.F.R. § 383.5. As Appellees–Defendants set forth in their motion, "commercial motor vehicle" is defined in pertinent part as:

> A motor vehicle or combination of motor vehicles used in commerce to transport passengers or property if the motor vehicle—
>
> (a) Has a gross combination weight rating of 11,794 or more (26,001 pounds or more) inclusive of a towed unit with a gross vehicle weight rating of more than 4,536 kilograms (10,000 pounds); or
>
> (b) Has a gross vehicle weight rating of 11,794 or more kilograms (26,001 pounds or more).

49 C.F.R. § 383.5. This definition has been adopted almost verbatim in I.C. § 9–13–2–31.

The parties do not dispute that the Penske rental truck Bassett was driving at the time of the collision weighed less than 26,000 pounds. Clearly, the Penske rental truck was not a commercial motor vehicle pursuant to FMCSR and Indiana statute. Further, a driver is only required to possess a commercial driver's license if he or she is operating a commercial motor vehicle. *See* 49 C.F.R. § 383.5 and I.C. § 9–13–2–30. Therefore, we find that, because the Penske rental truck was not a commercial motor vehicle pursuant to FMCSR and state statute for purposes of licensing, Bassett was not required to possess a commercial driver's license to operate the truck. For these reasons, we find that the FMCSR did not apply to Penske, Kelly's Shell and Bassett with regard to the subject rental. Accordingly, we affirm the trial court's grant of summary judgment in

favor of Penske, Kelly's Shell and Bassett with regard to the Frohardts' claim that they were negligent per se for violating the FMCSR. *See Figg*, 646 N.E.2d at 71.

### C. *Proximate Cause*

Because we have found that Penske, Kelly's Shell and Bassett committed no violation of state statute or federal regulation, we find that they were not negligent per se. *See Town of Montezuma*, 685 N.E.2d at 112. For these reasons, we do not reach the Frohardts' claim that Appellees–Defendants' state and federal violations proximately caused Robert's injuries. *See id.* Rather, we find that summary judgment was properly granted in Appellees–Defendants' favor with regard to this issue.

### III. *Negligent Entrustment*

In their Complaint, the Frohardts allege that Penske and Kelly's Shell negligently entrusted the rental truck to Bassett. To prevail on a claim of negligent entrustment, the Frohardts must show that Penske and Kelly's Shell entrusted the rental truck to Bassett with knowledge that Bassett was incompetent to drive. *Roessler v. Milburn*, 692 N.E.2d 1377, 1379 (Ind.Ct.App.1998). To incur liability, Penske and Kelly's Shell must have had actual and immediate knowledge that Bassett was incompetent to drive at the time of entrustment. *Id.* Bassett was incompetent to drive if he was incapacitated, uninstructed in the truck's use, or unfamiliar with the dangers of using the truck. *Id.* Such is not the case here.

On the morning he rented the truck from Kelly's Shell, Bassett presented a valid Indiana operator's license to Kelly. Kelly testified that Bassett did not appear to have health problems, did not appear to

be intoxicated and seemed to be a competent adult. Kelly further testified that, before Bassett departed with the rental truck, Kelly reminded him that the truck would not stop like a car, so extra stopping distance should be given when driving the truck, and that extra care should be taken at intersections, when backing up and when turning corners. Bassett testified that he had driven a similar truck before and knew the difference between a car and a truck of this size.

We find that the Frohardts' argument that Bassett was incompetent at the time he rented the truck fails to demonstrate that Penske and Kelly's Shell had "actual and immediate knowledge" of Bassett's alleged incompetency. *See Roessler*, 692 N.E.2d at 1379. In fact, the Frohardts assert that the standard for this case should be reduced from actual and immediate knowledge to "one who rents a truck is liable where he knew or should have known of the renter's incompetence." (Appellant's App. p. 331). We decline to accept the Frohardts' invitation.[4] Accordingly, we find that the Frohardts have raised no genuine issue of material fact as to their negligent entrustment claim, and that summary judgment was properly granted in Penske and Kelly's Shell's favor.

### IV. *Respondeat Superior*

Next, the Frohardts contend that B&B is liable for Bassett's negligence under the theory of respondeat superior. The Frohardts acknowledge that they have argued in their opposition to Appellees–Defendants' motion that Bassett was an independent contractor to B&B. However, the Frohardts explain that they are exercising their option to plead alternative the-

---

**4.** We further decline to accept the Frohardts' invitation to adopt Florida's "dangerous instrumentality" doctrine, whereby owners of trucks are vicariously liable for the negligence of drivers to whom the trucks have been rented.

ories of liability pursuant to Ind. Trial Rule 8(E)(2).

▉▉▉▉ Under the doctrine of responde-at superior, an employer is liable for the acts of its employees that were committed within the course and scope of their employment. *Interim Healthcare of Fort Wayne, Inc. v. Moyer ex rel. Moyer*, 746 N.E.2d 429, 431 (Ind.Ct.App.2001), *trans. denied.* However, a principal is not liable for the negligence of an independent contractor. *Moberly v. Day*, 757 N.E.2d 1007, 1009 (Ind.2001). Determining whether a person is an employee or an independent contractor is generally a question for the finder of fact. *Id.* Only when "the significant underlying facts are undisputed" may a court categorize a worker as either an employee or independent contractor as a matter of law. *Id.* In distinguishing between an employee and independent contractor, the *Moberly* court examined the following factors:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*Id.* at 1010.

Here, with respect to the degree of control exercised by the employer, we note that William Ball stated during his deposition, "I told [Bassett] what I wanted and what I didn't want." (Appellant's App. p. 149). However, evidence was not presented regarding whether any special instructions were given to Bassett with respect to his usual task of cleaning hubcap centers. Thus, like certain factors in *Moberly*, this factor is of little use. *Id.* at 1011.

With respect to whether Bassett was employed in a particular occupation or business, the record shows that the type of work Bassett performed was cleaning hubcaps and occasionally driving a leased truck. (Appellant's App. p. 149). This work—unlike cleaning carpets or repairing trucks—is not the type of occupation commonly pursued by independent contractors. In sum, this factor leans in favor of a finding that Bassett was an employee.

Turning to the third factor—the kind of occupation—we note that the cleaning of hubcaps and the occasional driving of a truck are typically not performed by specialists without employer supervision. While an *industrial* hubcap cleaner or over-the-road truck driver might qualify as a specialist, such was not the case here. No evidence was presented regarding any sort of special skills required to clean hubcaps, and Bassett drove the truck only three or four times. (Appellant's App. p. 638). Thus, this factor militates in favor of a finding that Bassett was an employee.

No evidence was presented directly addressing the degree of skill required—the fourth factor—in cleaning the hubcap centers. However, Bassett testified that he was never trained in the cleaning of hubcaps. (Appellant's App. p. 163). Additionally, B&B hired Bassett to clean hubcaps on other occasions, indicating that even though Basset was not trained in the role of a hubcap cleaner, he performed reasonably well. Thus, one could reasonably infer that cleaning hubcap centers is not a high-skill occupation and weighs in favor of a finding that Bassett was an employee.

With respect to the provision of instrumentalities, we note that Bassett went to B&B's store for work. (Appellant's App. p. 638). Ball went to Kelly's Shell to make arrangements to lease the truck, and only then did Bassett get the truck. (Appellant's App. p. 152). In short, Bassett did not provide any instrumentalities with respect to his work for B&B. Thus, this factor tends to show that Bassett was an employee.

The evidence presented regarding the length of employment was conflicting. Bassett stated that he worked "just about every week" for "about ten or fifteen hours a week." (Appellant's App. p. 638). However, Ball stated that Bassett only worked a total of thirty days within a year's time and "not straight" but "off and on." (Appellant's App. p. 752). Thus, an issue of fact regarding the length and steadiness of employment existed.

With respect to the method of payment, we note that Bassett testified at his deposition that he was paid "Minimum wage, five dollars." (Appellant's App. p. 163). Ball stated at his deposition that he paid Bassett $5.25 or $5.50 per hour. (Appellant's App. p. 754). Ball paid him in cash each week. (Appellant's App. p. 754). The fact that Bassett was paid by the hour instead of by the job weighs heavily in favor of a finding that Bassett was in fact an employee of B&B.

B&B was in the business of buying and re-selling hubcaps. (Appellant's App. p. 751). In fact, Ball stated that he sold such items "to hubcap stores throughout the United States." (Appellant's App. p. 148). Bassett cleaned the hubcaps to make them ready for re-sale. (Appellant's App. p. 753). Clearly, the work Bassett did was a regular part of B&B's business.

With respect to the type of relationship the parties believed they were creating, Ball acknowledged that Bassett was an occasional employee of B&B. (Appellant's App. p. 752). This tends to show that—in Ball's mind—an employer-employee relationship existed.

In all, at least eight factors weigh in favor of Bassett being an employee instead of an independent contractor. At the very least, such factors create an issue of material fact that precludes an award of summary judgment in favor of B&B with respect to the issue of vicarious liability. Accordingly, we reverse the trial court's grant of summary judgment in favor of B&B on the issue of respondeat superior.

## V. *Trial Rule 56(F)*

■ Finally, in their Complaint, the Frohardts allege that Penske and Kelly's Shell are negligent in that they have engaged in a pattern of renting large trucks to unqualified drivers for profit. The Frohardts filed a motion pursuant to T.R. 56(F) in an effort to compel Penske to produce Carlos Perez (Perez), who is Penske's Corporate Litigation Examiner, for deposition.[5] Specifically, the Fro-

---

5. T.R. 56(F) provides as follows:

Should it appear from the affidavits of a party opposing the motion that he cannot

hardts assert that Penske included an affidavit dated January 11, 2001, from Perez in support of its motion for summary judgment. In the affidavit, Perez attested that Penske rented out "hundreds of thousands" of rental trucks each year and that generally 8,000 to 9,000 of these trucks were involved in collisions. (Appellant's App. p. 924). The Frohardts contend that Penske's failure to produce Perez for deposition denied them of their right to cross-examination. The Frohardts offer no authority in support of their assertion.

██ Generally, it is improper to grant summary judgment when requests for discovery are pending. *Mutual Sec. Life Ins. Co. by Bennett v. Fidelity and Deposit Co. of Maryland*, 659 N.E.2d 1096, 1103 (Ind. Ct.App.1995), *trans. denied.* However, when pending discovery is unlikely to develop a genuine issue of material fact, summary judgment is appropriate. *Id.*

Here, the Frohardts' claim that Penske and Kelly's Shell have negligently engaged in a pattern of renting trucks to unqualified drivers for profit is necessarily premised on their claim of negligent entrustment of a vehicle to Bassett. We have already determined that summary judgment was properly granted in favor of Penske and Kelly's Shell with regard to negligent entrustment of a vehicle. Consequently, further discovery related to the Frohardts' pending T.R. 56(F) motion was unlikely to develop a genuine issue of material fact. For these reasons, we find that the trial court's grant of summary judgment in favor of Penske and Kelly's

Shell was appropriate. *See Mutual Sec. Life Ins.*, 659 N.E.2d at 1103.[6]

## CONCLUSION

Based on the foregoing, we affirm the trial court's grant of summary judgment in favor of Penske, Kelly's Shell, and B&B with regard to the claims of negligence per se, the issues of proximate cause and negligent entrustment, and the Trial Rule 56(F) claim. We reverse the trial court's grant of summary judgment in favor of B&B with regard to the issue of respondeat superior and remand to the trial court for further proceedings.

Affirmed in part, and reversed and remanded in part.

BAKER and MATHIAS, JJ., concur.

---

for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**6.** We note that the case chronology reflects that the trial court denied the Frohardts' T.R. 56(F) motion on the same day Appellees–Defendants' motion for partial summary judgment was granted. For the same reasons stated above, we find that the trial court did not err in denying the Frohardts' motion. (Appellants' App. p. 17).