**Byron CARTER, Appellant–Defendant**

v.

**PROPERTY OWNERS INSURANCE COMPANY, Appellee–Plaintiff.**

No. 27A02–0511–CV–01035.

Court of Appeals of Indiana.

May 3, 2006.

John Johnston, Johnston & Johnston, Wabash, for Appellant.

Thomas R. Haley, Geoffrey C. Lambert, Jennings Taylor Wheeler & Haley, P.C., Carmel, for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Byron Carter appeals from the trial court's order granting summary judgment in favor of appellee-plaintiff Property Owners Insurance Company (Property Owners). In particular, Carter contends that the trial court erred in, among other things, concluding that he was an employee, rather than an independent contractor, such that his injury on the job was not covered by Property Owners' insurance policy issued to Three Star Properties, Inc. (Three Star). Concluding, among other things, that there is an issue of material fact with respect to Carter's employment status and that Property Owners is not entitled to judgment as a matter of law at this juncture, we reverse the judgment of the trial court and remand for trial.

### FACTS

On July 17, 2000, Carter sustained personal injuries in an accident that occurred while he was assisting Three Star and Benhower Building Movers, Inc. (Benhower) in moving a house in Grant County. Three Star is a business that renovates and moves houses from one location to another. Whenever it planned to move a house, Three Star hired laborers and a moving company to help with the move. Mike Helms, Three Star's president and part owner, explained that Three Star hired laborers in addition to a moving company because, "If you've got a big building or a lot of work, you hire more than one laborer." Appellant's App. p. 138.

The parties dispute the nature of Carter's relationship to Three Star. According to Property Owners, Carter was an employee of Three Star. But according to Carter, Three Star, and Helms, Carter was an independent contractor. Indeed, at the time that Three Star hired Carter, Helms informed him that he would be working as an independent contractor, not as an employee. Three Star required Carter to sign an independent contractor affidavit of exemption with the Worker's Compensation Board, stating that he was an independent contractor working in the construction trades. When Carter filed a request for assistance with the Worker's Compensation Board, Three Star's attorney filed a response, stating that "Carter was an independent contractor and not an employee." Appellant's App. p. 55.

Carter began working on certain Three Star projects in March 1999. Three Star paid Carter between eleven and twelve dollars per hour, and Helms understood that Carter worked as a general laborer. Carter kept track of his hourly work and was paid on that basis by Three Star. Three Star provided certain tools for Carter's use in the moving process. Generally, Carter performed whatever kind of work Helms instructed him to do. Benhower instructed Carter with regard to loading the house onto the truck, but Carter's other instructions came from Helms. Additionally, Three Star relied upon Carter to supervise temporary help obtained for Three Star through temporary employment agencies.

On the day of the accident, Three Star hired Benhower to transport a house. On that day, Helms instructed Carter to climb on top of the house to push any overhead wires out of the way during the move. Benhower informed Carter that it was not a good idea to be on the roof during the move; indeed, Benhower did not permit anyone to be on the roof during a move because of the risk of electrocution. During

the move, Carter was electrocuted and sustained injuries as a result of the electrocution.

At the time of the accident, Three Star was insured by a Commercial General Liability Insurance Policy (Policy) issued by Property Owners. The Policy contains the following exclusions on liability coverage:

2. Exclusions

This insurance does not apply to:

\*    \*    \*    \*    \*    \*

d. Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. "Bodily injury" to:

(1) An employee of the insured arising out of and in the course of employment by the insured . . .

\*    \*    \*    \*    \*    \*

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

\*    \*    \*    \*    \*    \*

5. "Insured contract" means:

\*    \*    \*    \*    \*    \*

f. That part of any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means

a liability that would be imposed by law in the absence of any contract or agreement.

Appellant's App. p. 203–04.

On February 15, 2001, Carter filed a lawsuit (the Carter Lawsuit) against Three Star, Helms, and Benhower, seeking damages for the injuries he sustained as a result of the electrocution. Property Owners is defending Three Star and Helms in that action pursuant to a reservation of rights in the underlying action herein.

On May 14, 2003, Property Owners filed a complaint for declaratory judgment against Carter, arguing that the Policy does not cover Carter's injuries, inasmuch as he was an employee of Three Star and sustained the injuries in the course of his employment. On April 13, 2005, Property Owners filed a motion for summary judgment, arguing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Following briefing and a hearing, on October 11, 2005, the trial court entered summary judgment in favor of Property Owners. Carter now appeals.

## DISCUSSION AND DECISION

Carter argues that the trial court erred in granting summary judgment in favor of Property Owners. In particular, he contends that: (1) the trial court should have allowed the trial court in the Carter Lawsuit to determine whether Carter was an employee of Three Star; (2) the Policy is ambiguous; and (3) there is a genuine issue of material fact with respect to Carter's status as employee or independent contractor.

### I.  Standard of Review

As we consider Carter's arguments, we observe that summary judgment is appropriate only if the pleadings and evidence

considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 909 (Ind.2001); *see also* Ind. Trial Rule 56(C). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning,* 754 N.E.2d at 909. Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Id.*

An appellate court faces the same issues that were before the trial court and follows the same process. *Id.* at 908. The party appealing from a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

## II. The Carter Lawsuit

■ Carter first argues that the trial court should have declined to address whether he is an employee or an independent contractor of Three Star. According to Carter, the trial court here should have permitted the trial court in the Carter Lawsuit to decide that issue. He contends that Property Owners' conduct is having a direct effect on the outcome of both cases, inasmuch as it is defending Three Star and Helms in the Carter Lawsuit and is a party to this one. The defendants in the Carter Lawsuit are not raising a defense that he was an employee, in which case his tort claim would be barred by worker's compensation laws. Thus, Carter contends that Property Owners has taken inconsistent positions with respect to Carter's employment status and that the trial court herein should not have permitted "Property Owners to assert that Carter was an employee and not an independent contractor when Property Owners was asserting just the opposite in the Carter Lawsuit." Appellant's Br. p. 14.

Property Owners, however, is not a party to the Carter Lawsuit. To the contrary, it is merely defending its insured, as it is obligated to do. Property Owners has a duty to defend its insured regardless of the insureds' factual contentions. *Wilson v. Cont'l Cas. Co.,* 778 N.E.2d 849, 852 (Ind.Ct.App.2002). It is Property Owners' insureds, not Property Owners, who admit in the Carter Lawsuit that Carter was an independent contractor of Three Star. Because Property Owners' contentions are adverse to its insureds, it acted properly in filing a separate complaint for declaratory judgment even as it continued to defend its insureds in the Carter Lawsuit. Under these circumstances, the trial court herein appropriately considered the issue of Carter's employment status.

## III. The Policy

■ Carter next argues that the Policy is ambiguous, inasmuch as it fails to define the terms "employee" and "subcontracted work." Insurance contracts are subject to the same rules of interpretation as are other contracts. *Allstate Ins. Co. v. Dana Corp.,* 759 N.E.2d 1049, 1053–54 (Ind.2001). If the policy language is clear and unambiguous, it should be given its plain and ordinary meaning. *Id.* at 1054. In ascertaining a contract's clarity, or lack thereof, a court considers the whole document, not just the disputed language. *In re Kemper Ins. Cos.,* 819 N.E.2d 485, 490 (Ind.Ct.App.2004). If the terms of the

contract are unclear, ambiguous, or capable of more than one interpretation, courts will construe the contract to determine and give effect to the intent of the parties at the time they entered into it. *Id.* A contract is ambiguous when it "is susceptible to more than one interpretation as measured by the standard of whether reasonable minds could differ as to its meaning." *Id.* at 491.

Carter contends that the Policy is ambiguous because the terms "sub-contracted work" and "employee" are not defined. He directs our attention to the premium charged by Property Owners. In particular, Carter notes that Property Owners charged Three Star $1.231 for each $1,000 of "Sub–Contracted Work."[1] Appellant's App. p. 69. The distinction between subcontractors and employees is not apparent from the Policy; accordingly, we agree with Carter that the Policy is ambiguous. Next, therefore, we will turn to the common law ten-factor test designed to distinguish between employees and independent contractors.

## IV. Employee vs. Independent Contractor

■■■ Finally, we must determine whether the trial court properly concluded that Carter was an employee of, rather than an independent contractor for, Three Star.[2] Whether one acts as an employee or an independent contractor is generally a question for the finder of fact. *Moberly v. Day,* 757 N.E.2d 1007, 1009 (Ind.2001). If the significant underlying facts are undisputed, however, the court may properly determine a worker's classification as a matter of law. *Id.*

■■■ In Indiana, a ten-factor analysis is used to distinguish employees from independent contractors. *Id.* at 1009–10. These factors are:

"(a) The extent of control which, by the agreement, the master may exercise over the details of the work;

(b) Whether or not the one employed is engaged in a distinct occupation or business;

(c) The kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) The skill required in the particular occupation;

(e) Whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

---

1. Carter argues that there is a genuine issue of material fact with respect to whether he was a sub-contractor who performed "Sub–Contracted Work" within the meaning of the Policy. Similarly, he contends that if Property Owners received a premium based on Carter's wage as a "sub-contractor," it is estopped from denying that he is an independent contractor. But he cites neither to any facts supported by the record nor to any reasonable inferences therefrom that his work was "Sub–Contracted Work" or that Property Owners received a premium based on Carter's wage. Accordingly, this argument must fail. Additionally, contrary to Property Owners's contention, Carter did not waive this argument, inasmuch as he included it in his memorandum in support of his opposition to summary judgment. Appellant's App. p. 31–32. Indeed, Property Owners responded to this argument in its reply brief on summary judgment. *Id.* at 20.

2. Carter also argues that the Policy exclusion does not apply because he was working for Benhower, not Three Star, at the time he was injured. While there is evidence that Carter took direction from Benhower, there is no evidence that he was employed by Benhower. Carter was paid by Three Star and answerable to Helms, and nothing in the record supports a contrary conclusion. Consequently, this argument must fail.

(f) The length of time for which the person is employed;

(g) The method of payment, whether by the time or by the job;

(h) Whether or not the work is a part of the regular business of the employer;

(i) Whether or not the parties believe they are creating the relation of master and servant; and

(j) Whether the principal is or is not in business."

*Id.* at 1010 (quoting Restatement (Second) of Agency § 220(2) (1958)). In applying the analysis, all factors are considered, and no single factor is dispositive. *Id.*

### A. *Extent of Control*

Our Supreme Court looks to the definition of "employee" offered by the Restatement (Second) of Agency section 220(1) for guidance: one who is " 'employed to perform services in the affairs of another and who[,] with respect to the physical conduct in the performance of the services[,] is subject to the other's control or right to control.' " *Moberly,* 757 N.E.2d at 1010. Additionally, comment (d) describes control or right to control as " 'important and in many situations ... determinative.' " *Id.*

Here, Helm initially testified that Three Star gave Carter only general instructions regarding the work to be done: "Just like any other contractor, he's got X amount of work to do and this is when it will take place and this is what's to be done." Appellant's App. p. 137. Helms also testified that Benhower, not Three Star, exercised primary control over Carter:

Q. What was he supposed to be doing? What were his specific instructions from Three Star as to what he was to be doing that day:

A. Just general labor.

Q. Well what specifically in terms of general labor? Could he mow the yard? I'm trying to figure out exactly what it is you wanted him to do.

A. Whatever needed to be done. That's all I know. Whatever Benhower had him to be, to be doing.

Q. Was he supposed to do whatever Benhower told him to do?

A. As far as I know.

Q. Is that what you told him to do?

A. I didn't tell him nothing specifically he, [sic] do exactly as Benhower says.

Q. Well I'm trying to figure out what instructions Three Star gave this man that, uh, it had hired a general labor to do that particular day that he was injured?

A. They basically did what they needed to do, what needed to be done. We weren't there to instruct them on any of it.

Q. Well, what was it that needed to be done that you expected Mr. Carter to do?

A. They were told when we started work on a house what needed to be done, by this time he knew what to do and that.

*Id.* at 140. Similarly, Helms also testified as follows:

Q. What was [Carter's] role on the jobs of [Benhower]?

A. Just general labor. General contractor.

Q. Hired by you?

A. I paid him. Benhower would tell him what he wanted.

*Id.* p. 128.

But Property Owners directs us to the following portion of Helms's testimony as support for its assertion that Three Star,

not Benhower, exercised primary control over Helms:

Q. With respect to Mr. Carter, if I understand your testimony, he was instructed to show up for work, but you didn't tell him what he needed to do.

A. They were given the instruction on the houses when we was starting on them and that was it.

Q. Okay. What were the instructions you gave generally?

A. Remove anything underneath that needed to be removed to get the I-beams under them. Get the foundation knocked out to where they could get it under there and then we found out whatever the height was, well cut it down to there. He could assist on that [but] for a lot of times he didn't.

Q. Okay. And those are the instructions that came from Three Star?

A. Yeah.

Q. Were there any instructions pertaining to what to do while the house was being moved?

A. No.

*Id.* at 142.

Additionally, Carter testified that for moves involving Benhower, he took instructions from Benhower regarding the work to be done. *Id.* at 147. But Carter later testified as follows:

Q. When you received instructions about your work assignments and described, you know, helping getting the houses up, that kind of thing. Did, was it Mr. Helms that told you how to do that or what to do?

A. Right.

Q. Other than taking some instruction from Mr. Benhower about moving some beams to get it loaded on the truck, did he ever give you any other instructions about what to do on any of these moves?

A. Not that I can recall.

Q. Okay. Um. When you were involved in the house moves, um, did you have an understanding as to your role in the move? And what I mean by that is, were you the representative on behalf of Three Star that was present during these moves? Or were you just a laborer?

A. I was just a laborer. I just, just know whatever had to be done, I just, you know, knows what had to be done, so?

*Id.* at 156.

After considering the above evidence, we can only conclude that there is a conflict with respect to the degree of control exercised over Carter, and by whom the primary control was exercised. Both Helms and Carter attested that Helms gave Carter little instruction, that Helms gave Carter more substantial instruction, that Benhower gave Carter his primary instructions, and that Benhower only instructed Carter on very specific portions of the move. Given that we must construe all facts and reasonable inferences against Property Owners, for the purposes of summary judgment, we conclude that this factor weighs in favor of Carter being an independent contractor rather than an employee. At the very least, the evidence tends to reveal a rather substantial issue of material fact appropriate for resolution by the trier of fact.

### B. Occupation or Business of One Employed

The Restatement notes that this factor examines "whether or not the one employed is engaged in a distinct occupation or business." Restatement (Second)

Agency § 220(2). Helms's and Carter's testimony establish that Carter worked as a general laborer for Three Star. Appellant's App. p. 126, 146. Additionally, Helms's testimony demonstrates that he sought to hire Carter because he knew that Carter "did odd jobs and contracting work and painting . . . ." *Id.* at 126. But Three Star requested that Carter sign an affidavit when he began working, which states that Carter is "an independent contractor working in the construction trades . . . ." Appellant's App. p. 53. The affidavit notwithstanding, all of the testimony describing Carter's actual function on the worksite and employment prior to being hired by Three Star establishes that he is engaged in a more general, less distinct, occupation. Consequently, this factor weighs slightly in favor of an employee conclusion.

### C. Kind of Occupation

As noted above, this factor examines whether the work is generally done under the direction of the employer or by a specialist without supervision. While there is conflicting evidence regarding whether Carter was primarily following the directions of Helms or Benhower, there is no suggestion in the record that Carter was operating without supervision, nor is there evidence that a general laborer would generally work as a specialist without supervision. Although we conclude that this factor weighs in favor of an employee conclusion for the purposes of summary judgment, we note that the evidence in the record before us is not conclusive with respect to whether Carter was employed by Three Star or Benhower.

### D. Skill Required

As already established herein, Carter was employed as a general laborer who assisted Three Star in moving houses. He was required to ride atop the house being moved to handle overhead wires, to assist in inserting the I-beams under the house, to adjust the foundation, and to assist in cutting the house down to size before it was moved. While Carter was not operating without supervision and direction, we are persuaded that these tasks require at least a modicum of special skill. Consequently, this factor weighs slightly in favor of an independent contractor conclusion.

### E. Supplier of Equipment, Tools, and Work Location

With respect to equipment and tools, Helms testified as follows:

Q. What tools had [Carter], had you known him to bring to the job?

A. Whatever he needed. I didn't go check what he brought.

Q. Did you ever provide any tools for him to use, or Three Star?

A. Yes.

Q. What kind of tools?

A. If he needed a shovel, we usually had a shovel. If he needed a rake or a hammer or . . .

Q. Saw?

A. Or a saw. General hand tools.

Q. That's what Three Star would provide to him?

A. Right.

Q. Would it be fair to say that Three Star would provide, generally provide whatever tools he needed on the job?

A. No. He had his own too.

Q. What kind of tools did he have?

A. I have no idea.

Appellant's App. p. 141. Helms's testimony, therefore, establishes that while Carter had his own tools, Three Star also provided certain tools for his use. Thus, this factor does not tilt the scale in either

direction, but this evidence may be considered by the trier of fact in light of all the other evidence with respect to Carter's status.

As to work location, "it was the nature of their task that defined their work boundaries . . . ." *Moberly,* 757 N.E.2d at 1012. Consequently, physical work location is "not particularly helpful," *id.,* given the nature of the work.

### F. Length of Employment

Our Supreme Court observed that "a long-term relationship can indicate employee status," *id.,* but also noted that the Restatement refers to " 'employment over a considerable period of time *with regular hours.' " Id.* (quoting Restatement (Second) Agency § 220(1) cmt. h) (emphasis in *Moberly* ).

Here, Helms and Carter acknowledge that Carter had been working for Three Star since March 1999, which was when Helms formed Three Star. But Helms testified that Carter was only involved in approximately six of the "nine or ten" house moves undertaken by Three Star. Appellant's App. p. 126. There is no evidence regarding the hours Carter worked, whether the work was full- or part-time, or whether the work was constant. Because we must construe the facts and reasonable inferences therefrom in Carter's favor, we conclude that this factor weighs slightly in favor of an independent contractor conclusion for the purposes of summary judgment.

### G. Method of Payment

Three Star paid Carter by the hour rather than by the job, though Carter was responsible for keeping his time in a book and reporting the hourly figures to Three Star. The Restatement notes that payment by hour or month tends to indicate an employer-employee relationship. Restatement (Second) of Agency § 220(2) cmt. h. Thus, this factor weighs in favor of an employee conclusion.

### H. Regular Business of the Employer

Three Star's regular business was to oversee house-moving operations. Consequently, this factor weighs in favor of an employee conclusion.

### I. Belief of the Parties

The Restatement provides that "[i]t is not determinative that the parties believe or disbelieve that the relation of master and servant exists, except insofar as such belief indicates an assumption of control by the one and submission to control by the other." Restatement (Second) of Agency § 220(2) cmt. m. Here, the evidence is overwhelming that Three Star, Helms, and Carter all believed that Carter was an independent contractor rather than an employee. Indeed, as noted above, Three Star required Carter to complete an independent contractor affidavit of exemption for the Indiana Worker's Compensation Board. Property Owners directs our attention to testimony indicating that Carter took instruction from Three Star and Helms, but the mere fact that Carter took instruction is not determinative, inasmuch as even an independent contractor may require instruction from the principal. Accordingly, this factor weighs heavily in favor of an independent contractor conclusion.

### J. Whether the Principal Is in Business

Three Star was in business to perform house-moving operations for profit. Consequently, this factor weighs in favor of an employee conclusion.

### K. Summary

The "leading factor of control," *Moberly,* 757 N.E.2d at 1012, leans toward indepen-

dent contractor status and presents an issue of material fact. The remaining factors are split between employee status—Carter's occupation, kind of occupation, method of payment, regular business of employer, and whether the principal is in business—independent contractor status—skill required, length of employment, and belief of parties—and neutral—supplier of equipment and tools. Taken as a whole, therefore, the factors are split fairly evenly and reveal at least one substantial issue of material fact. Under these circumstances, we conclude that the trial court improperly granted summary judgment in favor of Property Owners. We observe that we were necessarily limited to the evidence available in the record on appeal in drawing our conclusions regarding each of the ten factors. To that end, we emphasize that our conclusions herein are drawn solely for the purposes of summary judgment. Because it is likely that additional evidence will be offered at trial regarding Carter's relationship to Helms and Three Star, the trial court is not bound by our *Moberly* analysis herein.[3]

The judgment of the trial court is reversed and remanded for trial.

MAY, J., concurs.

SULLIVAN, J., concurs in result, with opinion.

SULLIVAN, Judge, concurring in result.

I concur in the reversal of the summary judgment entered in favor of Property Owners Insurance Company and in the remand for further proceedings as to the factual status of Byron Carter whether as an employee or as an independent contractor of Three Star, Inc.

However, I respectfully dissent from the gratuitous conclusions reached by the majority with respect to the ten-factor analysis drawn from the Restatement of Agency.

I agree that the evidence designated to the trial court for purposes of summary judgment does not lead to a conclusion, as a matter of law, that Carter was an employee of Three Star, Inc. However, I believe it to be inappropriate for this court to assess that evidence and to conclude, with regard to any particular factor, that such factor weighs in favor of one status or the other.

The analysis of the evidence by the trier of fact should be governed by the instructions given by the court if there is a trial by jury or, if by bench trial by independent application of the evidence adduced at trial. That evidence assessment and the conclusion drawn from *all* of the evidence should not be tainted by our premature suggestions.

---

3. The concurring opinion concludes that, in evaluating a grant of summary judgment, it is inappropriate for us to "assess the evidence and conclude, with regard to any particular factor, that such factor weighs in favor of one status or the other." Op. p.722. But we have conducted precisely such an analysis in the past. *Frohardt v. Bassett*, 788 N.E.2d 462 (Ind.Ct.App.2003). We have emphasized herein that our conclusions are drawn only for the purposes of summary judgment and are not binding on the parties or the trial court if the case proceeds to trial. But to determine whether the trial court properly granted summary judgment, we are compelled to analyze each factor and to evaluate the trial court's conclusion that Carter was an employee of Three Star based upon the record before us, just as we did in *Frohardt*.