Jay MOBERLY and Jenny Moberly,
Appellants (Plaintiffs Below),

v.

William DAY d/b/a Day Farms,
Appellee (Defendant
Below).

No. 07S01–0010–CV–605.

Supreme Court of Indiana.

Nov. 15, 2001.

James R. Fisher, A. Richard M. Blaik-lock, Ice Miller Donadio & Ryan, India-napolis, James T. Roberts, Nashville, IN, Attorneys for Appellants.

J. Lee McNeely, Paul A. Logan, McNee-ly Stephenson Thopy & Harrold, Shelby-ville, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

Appellant Jay Moberly claims Joe Hendershot negligently injured him while the two were doing maintenance work at their father-in-law William Day's farm. Moberly wants Day to pay for the injury. The trial court concluded that Hendershot was an independent contractor, and entered summary judgment for Day. We affirm.

**Facts and Procedural History**

Day owns and operates a farm in Nashville, Indiana. In 1996, he fell ill with meningitis and became unable to do farm work because of ongoing dizziness, weakness, and difficulty walking.

Two of Day's sons-in-law, Moberly and Hendershot, each live within a quarter mile of the farm. Even before Day's illness, they assisted him in the farming operations upon request, for a half-day to two days at a time. On these occasions Day would pay for the help in an amount he considered fair, after the work was done.

On June 28, 1997, Day asked Moberly and Hendershot to dig up and repair some drainage tile in one of his fields. Hendershot provided a backhoe, as he had on previous occasions when he repaired drainage tile for Day.

Hendershot climbed into the backhoe seat. Moberly also attempted to climb onto the backhoe to ride to the field. As he did so, the backhoe's "boom" activated and swung around, seriously injuring Moberly's leg.

Moberly sued Day, alleging that both he and Hendershot were Day's employees, that Hendershot's negligence caused his injury, and that Day was vicariously liable for Hendershot's negligence.[1] Day denied

---

1. Neither party argued that Day is subject to Indiana's Worker's Compensation Act. *Mober-*

that he was Hendershot's employer and asserted several affirmative defenses.[2] He sought summary judgment on the basis that Hendershot was an independent contractor and that employers are not liable for the torts of independent contractors. The trial court granted Day's summary judgment motion.

The Court of Appeals reversed and remanded, finding genuine issues of material fact that made the determination of employee-contractor status inappropriate for summary judgment. *Moberly v. Day*, 730 N.E.2d 768 (Ind.Ct.App.2000). Judge Friedlander dissented, applying a seven-factor analysis and concluding that Hendershot was an independent contractor as a matter of law. *Id.* at 770–71. We granted transfer, and now consider whether the undisputed facts support a determination of Hendershot's status as a matter of law.

### Summary Judgment Standard of Review

Summary judgment requires evidence that leaves no genuine issues of material fact, so that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Ayres v. Indian Heights Volunteer Fire Dep't, Inc.*, 493 N.E.2d 1229 (Ind.1986). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Wright v. Carter*, 622 N.E.2d 170 (Ind.1993).

■ ⸰ On appeal from summary judgment, the reviewing court faces the same issues that were before the trial court and analyzes them the same way, *Ambassador Fin. Servs., Inc. v. Ind. Nat'l Bank*, 605 N.E.2d 746, 751 (Ind.1992), although the trial court's decision is "clothed with a presumption of validity," *Ind. Dep't of*

State Revenue v. Caylor-Nickel Clinic, P.C., 587 N.E.2d 1311, 1312–13 (Ind.1992).

■ While the nonmovant bears the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to be sure that the nonmovant was not wrongly denied his or her day in court. *Mullin v. Mun. City of South Bend*, 639 N.E.2d 278 (Ind.1994). Appellate review of a summary judgment ruling may take into account only those materials designated to the trial court. *Rosi v. Bus. Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993) (citing T.R. 56(H)).

### Employees v. Independent Contractors

■ Hendershot's employment status is the focal point of our analysis because of Indiana's "long-standing general rule ... that a principal is not liable for the negligence of an independent contractor." *Bagley v. Insight Communications Co.*, 658 N.E.2d 584, 586 (Ind.1995) (citing *Prest–O–Lite Co. v. Skeel*, 182 Ind. 593, 106 N.E. 365 (1914); *City of Logansport v. Dick*, 70 Ind. 65 (1880)). Whether one acts as an employee or an independent contractor is generally a question for the finder of fact. *Mortgage Consultants, Inc. v. Mahaney*, 655 N.E.2d 493 (Ind.1995). If the significant underlying facts are undisputed, however, the court may properly determine a worker's classification as a matter of law. *See Hale v. Kemp*, 579 N.E.2d 63 (Ind.1991). The trial court here made such a determination, and granted summary judgment accordingly.

■ In *Mortgage Consultants, Inc.*, we applied a ten-factor analysis described

---

*ly v. Day*, 730 N.E.2d 768, 770 n. 2 (Ind.Ct. App.2000).

**2.** One defense Day asserted was that, even if Hendershot was his employee, the Fellow

Servant Doctrine shielded him from liability. (Appellee's Br. at 3.) Because we conclude that Hendershot was an independent contractor, we do not address the viability of the Fellow Servant defense.

in the Restatement (Second) of Agency § 220 (1958) to distinguish employees from independent contractors.[3] 655 N.E.2d at 495. These factors are:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

Restatement (Second) of Agency § 220(2) (1958). We consider all factors, and no single factor is dispositive. *Mortgage Consultants, Inc.*, 655 N.E.2d at 496.

### Applying the Factors

*A. Extent of Control over Details of the Work.* Restatement (Second) of Agency § 220(1) (1958) defines a servant (i.e. employee) as one "employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." Comment d. to subsection (1) further describes control or right to control as "important and in many situations ... determinative."

Here, the record does not indicate any formal agreement about the extent of control Day exercised over Hendershot's work. It does, however, describe the working arrangement. Moberly stated:

Q What instructions, if any, did [Day] give you to do those jobs where you helped [Hendershot], other than on the day you were injured?

A He would tell us what he wanted done and we would do it.

Q When he would tell you what he wanted done, was that fix the tile, or more detailed than that? What did he tell you?

A Whatever the job was.

---

**3.** We recently adopted a seven-factor test for determining whether a person is an employee of two different employers. *GKN Co. v. Magness,* 744 N.E.2d 397, 402 (Ind.2001)(citing *Hale v. Kemp,* 579 N.E.2d at 67); *see also Degussa Corp. v. Mullens,* 744 N.E.2d 407 (Ind.2001). These factors are: "(1) right to discharge; (2) mode of payment; (3) supplying tools or equipment; (4) belief of the parties in the existence of an employer-employee relationship; (5) control over the means used in the results reached; (6) length of employment; and, (7) establishment of the work boundaries." *GKN Co.,* 744 N.E.2d at 402.

These factors must be weighed as part of a balancing test, and not merely tallied in a majority-wins formulation. *Id.* Although no one factor is dispositive, the right to exercise control over the manner and means by which the work is to be accomplished is the most important consideration. *Id.* at 403. Not surprisingly, there is a good deal of similarity between these two lists. We think that each list of factors works slightly better when applied only for the purpose for which it was developed. Thus, we continue to apply the ten-factor approach when the issue is employee versus independent contractor status.

(R. at 53.) Day's description of the day of the accident is consistent:

Q What did you tell [Moberly] to do?

A I just told him to dig the holes up and fill in the tile, fix the tile.

Q You didn't specifically tell him each step?

A No, huh-uh.

Q And you didn't tell him to operate the equipment or to dig the hole or to do the back-filling?

A No.

Q How was that to be decided?

A That was *just between them,* you know. Whatever needed done. I mean If Joe needs him to do something, *I just left that up to them.*

(R. at 75 (emphasis added).) [4]

The evidence offered indicates that Hendershot was answerable to Day for results only, not the particulars of how he went about accomplishing assigned tasks. *See Mortgage Consultants, Inc.,* 655 N.E.2d at 495. *See also GKN Co.,* 744 N.E.2d at 406 (control is the most significant factor in evaluating single-versus dual-employer questions; even where truck driver was given a "ticket" for each load hauled, told where to take each load, and told when to arrive and leave each day, the facts

weighed "heavily" in favor of independent contractor status). Therefore, this important factor tilts the scale toward an independent contractor conclusion.

*B. Occupation or Business of One Employed.* Hendershot worked as a truck driver and heavy equipment operator for a materials company. (R. at 93.) This is a distinct enough occupation to weigh at least slightly in favor of independent contractor status.

*C. Kind of Occupation.* Unsupervised specialists commonly perform this type of heavy-equipment repair, although employers do sometimes direct such work. This factor is therefore not particularly meaningful in this case.

*D. Skill Required.* Moberly testified that he was present numerous times when Hendershot operated a backhoe, and that he knew how to run a combine and a bulldozer. However, when asked whether the levers on a bulldozer were comparable to those on a backhoe, he described himself as "unfamiliar" with backhoes. (R. at 154–55.) This testimony supports the inference that special skill is required to operate a backhoe, even for someone experienced in operating other heavy equipment, so this factor weighs toward an independent contractor finding.

---

**4.** Moberly argues that the trial court erred by refusing to consider an affidavit submitted twelve days late. (Appellant's Br. at 16.) In the late affidavit, Hendershot asserted that "[w]ith respect to any farm-hand tasks I did for William Day while in his employ which I did not already know how to do, William Day would show me how, step by step, to do those tasks." (R. at 262.) This assertion, if considered, might help Hendershot's claim that he was subject to Day's control. However, it only establishes that Day was willing to teach his son-in-law how to do unfamiliar farm chores. It does not rebut the evidence Day offered that on an ongoing basis, he would merely ask his sons-in-law for a particular result, and then leave them to their own devices.

Hendershot further stated that "[u]ltimately, William Day controlled the method and details of the work I did for him while in his employ." (*Id.*) This conclusory assertion, even if erroneously excluded, is insufficient to overcome Moberly's and Day's brief but more detailed descriptions of how the relationship worked.

Furthermore, by the date of the accident, Day was basically confined to his house and unable to oversee the farm work personally. (R. at 239.) Day's incapacity lends credence to the other evidence that he left project details to the discretion of Moberly and Hendershot.

*E. Supplier of Equipment, Tools, and Work Location.* Hendershot provided the backhoe that was the most important piece of equipment required on the day Moberly was injured. Hendershot had also supplied the backhoe on previous occasions over a period of years. The materials designated to the trial court contain no evidence indicating who supplied other tools or equipment on this or other occasions. Comment k. to Restatement (Second) of Agency § 220(2) indicates, however, that it is particularly significant if an employer provides tools or instrumentalities of substantial value, and the same would presumably be true if the workman is the provider. Therefore, this factor supports the trial court's conclusion that Hendershot was an independent contractor.

As to work location, Day told his sons-in-law the location of the holes that needed repair on the day of the accident. From that point on it was the nature of their task that defined their work boundaries; i.e., a drain repairman must go to the drain, whether he is an employee or an independent contractor. Physical work location is therefore not particularly helpful here given the nature of the work.

*F. Length of Employment.* Comment h. to Restatement (Second) of Agency § 220(2) indicates that a long-term relationship can indicate employee status, and here, Hendershot worked for Day over a period of four to five years. However, the Comment refers to "employment over a considerable period of time *with regular hours.*" *Id.* (emphasis added). Comment a. to § 220(1) also describes a servant (i.e. employee) as "one who performs continuous service for another."

Hendershot worked from time to time, as Day needed him and as another job allowed. On the day Moberly was injured, the two sons-in-law did not start on the requested task until afternoon because Hendershot had other work to do in the morning.[5] Although Hendershot responded whenever Day needed help, his hours were not regular and his service was not continuous. This factor also points toward independent contractor status.

*G. Method of Payment.* Day paid Hendershot by the job rather than in the form of a salary or an hourly wage. This payment was in whatever lump-sum amount Day considered fair. This type of payment is more typical of an independent contractor than of an employee. *See* Restatement (Second) of Agency § 220(2) cmt. h. (payment by hour or month indicates employer-employee relationship).

*H. Regular Business of the Employer.* Day was a farmer. Although farm operations involve periodic maintenance work, Day's regular business was not drainage tile repair. Day testified that farmers check their field drainage tile and repair holes only "maybe once a year." (R. at 95–96.) Again, this factor weighs at least slightly in favor of independent contractor status.

*I. Belief of the Parties.* Day denied that he ever considered Hendershot his employee. Moberly introduced no evidence contradicting this assertion. Comment m. to subsection (2) of the Restatement (Second) of Agency says, "It is not determinative that the parties believe or disbelieve that the relation of master and

---

**5.** Moberly stated in his deposition:

Q Where were you working on the day of the accident?
A Here at the farm.
Q What time did you arrive?
A I had arrived early in the morning and then had left and come back. I come and go. We had not started to do anything until afternoon. Joe had a previous job to go to and couldn't get up until later on.

(R. at 246.)

servant exists, except insofar as such belief indicates an assumption of control by the one *and* submission to control by the other." (Emphasis added.) The evidence in the record indicates that Day did not believe he had assumed control over Hendershot, so this factor favors independent contractor status.[6]

*J. Whether the Principal Is in Business.* Day was in business, as a farmer, so this factor favors employee status for Hendershot.

*Summary.* The leading factor of control leans toward independent contractor status. All other factors except the last (i.e. whether the principal is in business) are either neutral or, in most cases, weigh at least slightly in favor of independent contractor status.

Taken as a whole, then, the undisputed facts support the trial court's conclusion that Hendershot was an independent contractor. Consequently, Day is not liable for Moberly's injury, and the trial court did not err in granting Day's motion for summary judgment.

### Conclusion

We affirm the judgment of the trial court.

SULLIVAN, BOEHM, and RUCKER, JJ., concur.

DICKSON, J., dissents, believing the existence of genuine issues of material fact precludes summary judgment.

---

**6.** In the affidavit that the trial court excluded as untimely, Hendershot asserted that he was Day's employee. (Appellants' Br. at 16.)

Even considering this evidence, however, this factor is at least neutral from Day's standpoint.