Fouchard GUILLAUME and Christine Guillaume, Appellants–Plaintiffs,

v.

HALL FARMS, INC., and Midwest Marketing Co., Inc., Appellees–Defendants.

No. 42A01–0904–CV–163.

Court of Appeals of Indiana.

Aug. 19, 2009.

Publication Ordered Oct. 1, 2009.

—————

Matt Parmenter, Vincennes, IN, Attorney for Appellants.

James L. Fischer, Jr., Curtis P. Moutardier, New Albany, IN, David L. Clark, Clark & Steedman, Evansville, IN, Attorneys for Appellees.

## OPINION

BARNES, Judge.

### Case Summary

Fouchard and Christine Guillaume appeal the trial court's grant of summary judgment in favor of Hall Farms, Inc., and Midwest Marketing Co., Inc. ("Midwest"). They also attempt an interlocutory appeal regarding the trial court's denial of their motion to amend the complaint. We affirm the grant of summary judgment and dismiss the failed interlocutory appeal.

### Issues

The Guillaumes raise multiple issues, which we restate as:

I. whether Carolyn McCants was an employee of Midwest;

II. whether George Hilton was an employee of Midwest; and

III. whether the Guillaumes properly perfected for interlocutory appeal the issue regarding the denial of their request to amend the complaint.

### Facts

Fouchard was part of a traveling crew of farm laborers. In August of 2003, he was picking watermelons at Hall Farms. At that time, Rick and James Smith of Midwest had had a business relationship with Mark Hall of Hall Farms for thirty years. Midwest purchased large quantities of watermelons from Hall Farms for distribution and sale. Midwest paid Hall Farms for the produce and deducted expenses for packaging and harvesting. Midwest also took a commission based on a per pound industry standard. The business arrangement between Hall Farms and Midwest was not reduced to writing.

When their business relationship began, Hall Farms was doing its own harvesting with local people. Eventually, it got harder to find laborers and Hall asked James Smith to "find us a crew." App. p. 300. Carolyn McCants was a licensed harvesting contractor and began working with Midwest and Hall Farms in 2000 or 2001. She assembled crews of seasonal farm workers, and would hire and fire her own crew. At some point McCants hired Fouchard. Midwest would provide a check to McCants based on the tons of watermelons harvested. Midwest did not directly pay any of McCants's employees. She did turn over her payroll records to Midwest because the Labor Department required it. Midwest quit working with McCants when the Smiths discovered she did not have worker's compensation coverage.

The day to day decisions regarding which fields would be picked were made by Rick or James Smith. Rick Smith instructed McCants on how many loads to harvest, he would check ripeness of the crop, and he would make sure produce was packed properly. If Midwest had any problems with the crew, Rick or James would discuss the issue with McCants or her foreman, not with the crew member.

Hall Farms had no arrangements with McCants for harvesting other melons and the only arrangement was through Midwest. Hall Farms did not provide knives for cutting melons from vines, but it did provide tractors and wagons. On the first day of harvesting, a Hall Farms employee would move the tractors out to the fields, but after that the crews would move the farm implements throughout and between the fields. The crew members provided their own transportation to the fields each day. Sometimes Mark Hall would check the progress of McCants's crew, but as her crew was working Hall was busy supervising his own crew harvesting cantaloupes in other fields.

On August 21, 2003, another member of the crew, George Hilton, was driving a tractor pulling two flatbed wagons of watermelons. Fouchard was riding on one of the flatbed wagons. The Guillaumes allege that Hilton's driving caused the wagon to jerk, forcefully throwing Fouchard to the ground where he was seriously injured by the second wagon. Hall Farms owned the tractor and wagon involved in the accident.

On August 2, 2005, the Guillaumes filed a complaint alleging damages from Fouchard's injury against Hall Farms, Midwest, McCants, and Hilton. The complaint did not specifically allege the negligence of Hall Farms and Midwest; rather, it appears to impose vicarious liability by treating Hilton and McCants as employees of Midwest and/or Hall Farms and alleging Hilton and McCants were negligent.

Midwest moved for summary judgment on November 12, 2007, arguing that it did not employ Fouchard or Hilton and it could not be liable for the actions McCants—an independent contractor. Hall Farms made a similar summary judg-ment motion on December 7, 2007, arguing that it did not employ McCants or Hilton. The Guillaumes responded to both summary judgment motions by arguing that Hall Farms, Midwest, and McCants were engaged in a joint venture at the time of the injury. The Guillaumes also included theories of negligent entrustment and negligent supervision against Hall Farms and McCants. These new theories were also proposed in an amended complaint filed the same day. Midwest filed a reply in support of its summary judgment motion contending that a joint venture theory was unsupportable and the negligent entrustment and negligent supervision claims were time barred.

On March 17, 2009, the trial court granted Hall Farms's and Midwest's summary judgment motions, stating in its orders that each was a "final and appealable judgment and that there is no reason for delay in its entry." App. pp. 282, 284. That day the trial court also denied the Guillaumes' motion to amend their complaint. On March 24, 2009, the Guillaumes filed a motion to certify the denial of their motion to amend for interlocutory appeal. The trial court granted that motion. The Guillaumes did not seek certification of an interlocutory appeal with this court. This appeal followed.

### Analysis

#### I. *McCants's Employment Status*

The Guillaumes argue that Hilton and McCants were employees of Midwest and, therefore, summary judgment in favor of Midwest was improper. To defeat the summary judgment in favor of Hall Farms, the Guillaumes assert that Hall Farms's liability is based on its joint venture with Midwest.[1]

1. We need not reach this argument because we conclude neither McCants nor Hilton were employees of Midwest. Without that employment relationship, liability cannot be extend-

Summary judgment is appropriate only where the evidence shows there is no "genuine issue of material fact" and "the moving party is entitled to judgment as a matter of law." *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269–70 (Ind.2009) (citing Ind. Trial Rule 56(C)). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Id.* at 1270. Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the non-moving party must designate specific facts in response to establish a genuine issue for trial. *Id.*

■■■■ Midwest contends that McCants was an independent contractor, not its employee, and therefore, it has no liability for any alleged negligence of her or her crew members. *See Moberly v. Day,* 757 N.E.2d 1007, 1009 (stating the general rule that "a principal is not liable for the negligence of an independent contractor"). Generally, the question of whether one acts as an employee or an independent contractor is a question for the finder of fact. *Snell v. C.J. Jenkins Enterprises, Inc.,* 881 N.E.2d 1088, 1090 (Ind.Ct.App. 2008). A court may properly determine a worker's classification, however, if the significant facts are undisputed. *Id.*

■■■■ All of the parties use a seven-factor test to determine if an employee-employer relationship existed. *See Argabright v. R.H. Marlin, Inc.,* 804 N.E.2d 1161, 1166 (Ind.Ct.App.2004), *trans. denied.* We instead will use a ten-factor test to assess McCants's employment status pursuant to our supreme court's direction in *Moberly.*[2] *See Snell,* 881 N.E.2d at 1091 (declining to

use the seven-factor test even though the parties based their arguments on it). The *Moberly* court observed that the seven-factor test was designed to be used "for determining when a person is an employee of two different employers." *Moberly,* 757 N.E.2d at 1010 n. 3. We will use the seven-factor test to examine the relationship between Hilton and Midwest to determine if Hilton could possibly be considered an employee of both McCants and Midwest. Our task regarding McCants's status, however, is to determine whether she was an independent contractor or an employee of Midwest, which requires use of the ten-factor test. *See id.* We consider these ten factors and no single factor is dispositive:

a) the extent of control which, by agreement, the master may exercise over the details of the work;

b) whether or not the one employed is engaged in a distinct occupation or business;

c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

d) the skill required in the particular occupation;

e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

f) the length of time for which the person is employed;

g) the method of payment, whether by the time or by the job; h) whether or not the work is part of a the regular business of the employer;

ed to Midwest and then onto Hall Farms through any sort of joint venture situation, even if such a situation existed.

2. The Guillaumes reference the ten-factor test in their reply brief.

i) whether or not the parties believe they are creating the relation of master and servant; and

j) whether the principal is or is not in business.

*Id.* (citing Restatement (Second) of Agency § 220(a) (1958)).

### A. Extent of Control over Details of Work

 An employee is one "employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." *Walker v. Martin,* 887 N.E.2d 125, 131 (Ind.Ct.App.2008) (quoting Restatement (Second) of Agency § 220(1)), *trans. denied.* An independent contractor, however, generally controls the method and details of the task and answers to the principal only as to the results. *Id.* It is clear that McCants only answered to Midwest regarding the results of the harvest but generally controlled her crew, their methods, and the details of the tasks.

Rick Smith would decide when certain fields would be picked and whether the watermelons were sufficiently ripe. James Smith would "look at the big picture" including other farms being harvested and check the packing sheds and fields daily in order to work with his suppliers. App. p. 304. The Smiths also periodically checked to make sure the packing of the melons was adequate. If one of the Smiths noticed that harvested melons were not properly ripened, they would point that out to McCants, who would in turn "rectify the situation" with her crew. *Id.* at 309. Midwest did not otherwise control the means by which McCants and her crew harvested the melons. The instructions and checks by Midwest were limited to these issues, because the Smiths had many other fields, workers, and farms to monitor and could not spend all their time directing McCants or her crew.

According to Hall, Rick's role was to "coordinate the picking and loading," but Rick did not actually supervise the workers in the crew. *Id.* at 257. There is no evidence that Midwest had any control in the composition of McCants's crews, the crew's shifts, or their assignments. McCants was responsible for disciplining the crew. This factor weighs in favor of McCants being an independent contractor.

### B. Occupation or Business of Individual

McCants had a "crew leader's license from the Labor Department" and she was paid a set rate, which was calculated by the pound. *Id.* at 300. She moved her crews to various harvests in different geographic regions. McCants clearly had her own business and did not work exclusively for Midwest. This factor weighs in favor of her status as an independent contractor.

### C. Kind of Occupation

This factor focuses on whether the kind of occupation involves work usually done under direction or an employer or by a specialist without supervision. *Moberly,* 757 N.E.2d at 1010. According to James Smith, McCants operated as an independent contractor. She was told what fields to harvest, but she would hire and fire her crew, keep track of the crew's hours, discipline them, and pay them. Hall no longer hired his own harvesters. Instead, he relied on Midwest to find McCants and then in turn for McCants to get the crew in and working during his season. This factor weighs in favor of McCants being an independent contractor.

### D. Skill Required

According to the deposition of James Smith, a license from the Labor Department was required to run harvesting crews. Midwest expected McCants "to

harvest and package a quality watermelon." App. p. 320. "Skilled labor is often performed by an independent contractor." *Walker,* 887 N.E.2d at 132. McCants had a specific license and provided a specific skilled service—supplying farm laborers during the appropriate season. This factor supports her classification as an independent contractor.

### E. Supplier of Equipment, Tools, and Work Location

McCants provided the knives to her crew for cutting watermelons from the vine. Midwest provided the labels for the melons, conveyors, and shipping bins. Hall Farms supplied the tractors, wagons, and fuel. The work location included the fields at Hall Farms, some of which were on leased land. This factor is neutral.

### F. Length of Employment

McCants worked for Midwest only from mid-July until Labor Day. It was seasonal employment, and she only worked with Midwest for two or three seasons. It was not a long term relationship and this factor favors McCants's status as an independent contractor.

### G. Method of Payment

■ McCants was not paid an hourly wage. Instead she was paid a "set rate" which apparently varied each season and was "by the pound." App. p. 301. This type of payment is more typical of an independent contractor than of an employee. *See Moberly,* 757 N.E.2d at 1012 (citing the Restatement (Second) of Agency § 220(2) cmt.h. for the proposition that payment by the hour or month indicates employer-employee relationship). It is not clear how frequently she was paid. Midwest did not pay the crew, McCants did. She kept track of the crew's hours and determined their pay rates. Midwest was not involved in that process. By law, McCants had to pay her crew minimum wage and the Labor Department required copies of her payroll records to be kept with Midwest. This factor weighs in favor of McCants being an independent contractor.

### H. Regular Business of Employer

"This factor considers whether or not the work at issue is part of the regular business of the employer." *Walker,* 887 N.E.2d at 133. Midwest was a company in the business of buying and distributing melons. Though harvesting melons was a necessary part of its business, Midwest did not engage in that endeavor. James did not even have the proper contractor's license from the Labor Department to engage in such a practice. This factor is neutral.

### I. Belief of the Parties

■ "It is not determinative that the parties believe or disbelieve that the relation of master and servant exists, except insofar as such belief indicates an assumption of control by the one and submission to control by the other." *Moberly,* 757 N.E.2d at 1010 (quoting Restatement (Second) of Agency § 220(2), cmt. m). Rick referred to McCants as an independent contractor. He treated her as independent contractor and believed their business relationship to be one of dealing with an independent contractor. Neither Rick nor James professed any belief or assumption that they could control McCants or her business practice. Although the Guillaumes admit McCants's beliefs about the business relationship are unknown, they insist it must be inferred that McCants considered herself an employee of Midwest. Such an inference has no support in this record, and we will not make it. This factor slightly favors McCants being an independent contractor.

### J. Whether the Principal is in Business

Midwest was in fact in business, engaged in procuring and distributing pro-

duce. This lone factor favors employee status for McCants. *See Moberly*, 757 N.E.2d at 1013 (concluding that an employer engaged in business favors employee status for the worker); *Walker*, 887 N.E.2d at 134.

The facts set out above in discussing these ten factors are not in dispute. The Guillaumes did not submit evidence in the responses to the summary judgment motions to create questions of fact on these issues. A clear majority of these factors establish McCants as an independent contractor as a matter of law. Before concluding that summary judgment was properly granted for Midwest, however, we must also rule out the existence of an employment relationship between Hilton and Midwest.

## II. George Hilton's Employment Status

■ To the extent that the Guillaumes claim Hilton was employed by Midwest, we must determine whether Hilton was an employee of both McCants and Midwest. Our supreme court instructs that in making such a determination, we weigh the following seven factors: (1) the right to discharge; (2) mode of payment; (3) supplying tools or equipment; (4) belief of the parties in the existence of an employer-employee relationship; (5) control over the means used in the results reached; (6) length of employment; and (7) establishment of the work boundaries. *GKN Co. v. Magness*, 744 N.E.2d 397, 402 (Ind.2001). The factors are balanced and great weight should be given to the right of the employer to exercise control over the employee. *Id.*

■ Midwest did not have the right to discharge Hilton. Rick explained that they could report a problem to McCants or her foreman, but that he would not personally deal with or discharge a member the crew. Hilton was paid by McCants. Midwest did not issue his pay, determine his pay, withhold taxes, or provide worker's compensation insurance for him. Hall Farms supplied the tractors and wagons and the crew had their own knives. Midwest supplied packing bins and conveyors for the packing the harvest.

Midwest treated McCants as an independent contractor and did not claim any member of her crew as its own employee. Midwest admitted to having control over which fields the crew picked and the quantity of harvest for each day, but Midwest did not control the workings of the members of the crew. If Midwest was unhappy with the ripeness of the harvest, they would report the issue to McCants, who would then rectify the situation.

The Guillaumes seem to contend that because Midwest dictated which fields should be picked each day and monitored the ripeness of the melons that this involvement amounted to direct control as an employer. We disagree. There is no evidence that Midwest had any control over Hilton or any other members of the crew individually. Midwest's directions dealt with the quality of the produce to be sold. It did not affect the workings of the crew, its shifts, or the individual member's role in the crew or workday duties. Hilton's crew only worked from mid-July until Labor Day, and thus, the employment was seasonal and not long term.

Our assessment of these factors points to a conclusion that an employment relationship did not exist between Hilton and Midwest. The undisputed facts demonstrate that Midwest did not employ McCants or Hilton and therefore could not be liable for any alleged negligence on their part. As such, summary judgment in favor of Midwest and Hall Farms was proper.

### III. Interlocutory Appeal: Trial Court's Denial of Motion to Amend

The trial court denied the Guillaumes' motion to amend their complaint on March 17, 2009. The Guillaumes were attempting to add theories of negligent supervision and negligent entrustment against McCants, Hall Farms, and Midwest. On March 24, they filed with the trial court a motion to certify that decision for interlocutory appeal, which was granted the same day. On April 1, 2009, the Guillaumes filed their notice of appeal listing all issues. However, they did not file a motion with this court pursuant to Indiana Appellate Rule 14(B) requesting this court to accept jurisdiction of the interlocutory issue. Rule 14(B) states that such a motion "requesting the Court of Appeals accept jurisdiction over an interlocutory appeal shall be filed within thirty (30) days of the date of the trial court's certification." Ind.App. R. 14(B)(2)(a). As such, we do not have jurisdiction over this issue and it must be dismissed. *See Anonymous Doctor A v. Sherrard,* 783 N.E.2d 296, 299 (Ind.Ct.App.2003) (dismissing an appeal when the appellant failed to petition the Court of Appeals to accept jurisdiction pursuant to Appellate Rule 14(B)).

The Guillaumes argue that Appellate Rule 66(B) should allow our court to accept jurisdiction of the issue at this stage. We disagree and have previously declined such suggestions. *See Daimler Chrysler Corp. v. Yaeger,* 838 N.E.2d 449, 450 (Ind.2005) (holding that Appellate Rule 66(B) does not authorize an interlocutory appeal that fails to comply with Appellate Rule 14). Because this issue is dismissed, we do not consider whether the trial court properly denied permission to amend the complaint. We therefore do not reach the purported, but failed, issues of negligence entrustment and negligent supervision.

### Conclusion

Neither McCants nor Hilton were employees of Midwest, and therefore summary judgment in favor of Midwest and Hall Farms was proper. Consideration of the issue of whether the trial court properly denied the Guillaume's motion to amend their complaint is not properly before us on appeal and must be dismissed. We affirm.

Affirmed.

NAJAM, J., and KIRSCH, J., concur.

### ORDER

Appellee Hall Farms, Inc., by counsel, has filed a Motion to Publish Memorandum Decision.

Having reviewed the matter, the court FINDS AND ORDERS AS FOLLOWS:

1. Appellee's Motion to Publish Memorandum Decision is GRANTED. This Court's opinion handed down in this cause on August 19, 2009, marked Memorandum Decision, Not for Publication, is now ORDERED PUBLISHED.

NAJAM, KIRSCH, BARNES, JJ., concur.