## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 27 2015, 10:02 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Mark S. Pantello
Benson, Pantello, Morris, James & Logan, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Patrick J. Murphy
State Farm Litigation Counsel
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stacey E. Schwarz,

*Appellant,*

v.

Richard Schwarz and Lisa Schwarz,

*Appellees-Defendants Below.*

January 27, 2015

Court of Appeals Cause No. 02A03-1407-CT-239

Appeal from the Allen Superior Court, The Honorable Stanley A. Levine, Judge
Cause No. 02D03-1203-CT-118

**Vaidik, Chief Judge.**

# Case Summary

After a storm damaged the roof of a house Tenant was renting from Landlord, Landlord hired an experienced roofer to repair the roof, and supplied the roofer

with a compressor, some roofing materials, and a trailer and tarp to collect roofing debris. After the work was completed, Tenant stepped on a roofing nail in the yard of the house, and the nail puncture wound became infected, resulting in several surgeries and the ultimate amputation of her foot. Thereafter Tenant pursued a negligence claim against Landlord, asserting three alternative bases for liability: the roofer was acting as Landlord's employee and not as an independent contractor; even if the roofer was an independent contractor, Landlord still had a duty of reasonable care under an exception to the general rule that the principal is not liable for the actions of an independent contractor; and Landlord assumed a duty of reasonable care when Tenant complained about the roofing nails not being adequately cleaned up. Because we find that there is no genuine issue of material fact and, given the facts, no legal basis for Landlord to be found liable to Tenant, we affirm the trial court's grant of summary judgment in favor of Landlord.

# Facts and Procedural History

Stacey Schwarz (Stacey) rented a house on Roosevelt Drive in Fort Wayne from Richard and Lisa Schwarz (Richard) from March 2009 through July

2010.[1]  In December 2009 a storm caused damage to the roof of the house. Stacey notified Richard, and Richard contacted Eric Yager, a friend who had years of roofing experience and had previously been employed by Richard's company, Property Care Services, doing painting, drywall, basic repairs, and one roofing job.  Yager met Richard at the house, and they both climbed onto the roof to assess the project.  Yager advised that the roof should be temporarily patched up until better weather permitted replacement of the damaged parts of the roof, and Richard agreed to pay Yager $300 to perform this work. Thereafter, Richard provided a compressor, roofing materials such as felt and a piece of rubber roofing, and a tarp and flat-bed trailer to collect roofing debris, including nails.  Richard also hired someone to assist Yager for $50.  *See* Appellant's App. p. 104 ("Q: . . . Do you know how much Kyle was paid?  A: "If I'm not mistaken, I think . . . maybe 50 bucks.  He was there just to help me carry things.").

[3]  At some point when the work was being performed, Stacey complained to Richard that Yager was dropping roofing debris in a fenced-in area where her dogs would go.  Yager told Richard that he would go down and clean it up

---

1 The parties have the same surname, but they are not related.  Although Richard was renting the house to Stacey and acting as landlord, he did not own the house at the time of the incident giving rise to this case, but he was purchasing it under a fifteen-year contract that began around 2002.

when they were done tearing off that particular section of the roof. In the meantime, Stacey and her brother cleaned the area themselves with rakes. At the end of every workday, Yager would go around the house and clean up, picking up any visible debris and raking where he thought it was necessary, but he was not able to clean behind the trailer.

[4] On Super Bowl Sunday 2010, Stacey stepped on a nail with her left foot as she was walking from her car in the driveway to the side door of the house. The nail went "just ever so slightly" into her left shoe. *See id*. at 87. The next day Stacey got a tetanus shot. In response to the information that Stacey had stepped on a nail, Richard went to the house to look around and pick up debris, and he asked Yager to go back and check for debris.

[5] On March 4, while walking from the car to the house, Stacey stepped with her right foot on another roofing nail. Later that month, after her right foot became swollen and she could not walk on it, Stacey went to the doctor. It was discovered that the nail had caused an infection that resulted in a broken heel and, after multiple surgeries, the amputation of her leg below the knee.

[6] In March 2012, Stacey filed a complaint alleging negligence. Following discovery, Richard filed a motion for summary judgment with supporting memorandum in April 2014. Thereafter the trial court granted summary judgment in Richard's favor. Stacey now appeals.

# Discussion and Decision

[7] We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Hughley v. State*, 15 N.E.3d 1000 (Ind. 2014) (quoting Ind. Trial Rule 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* at 1003.

[8] The initial burden is on the summary-judgment movant to "demonstrate[] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for he trier of fact. *Id*. And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *Id*.

[9] On appeal Stacey contends that the trial court erred in granting summary judgment because there are genuine issues of material fact "under three separate theories of law that create a duty on the part of [Richard] to use reasonable care in the cleaning and disposal of the roofing debris." Appellant's Br. p. 6. In particular, Stacey argues that (1) Yager was acting as Richard's employee; (2) even if Yager was not an employee but an independent contractor, there is still

a duty of reasonable care on Richard's part because "he cannot delegate a duty when he knows that there is a probability of injury if the cleanup is not done with due caution"; and (3) Richard assumed the duty of cleaning the roofing debris from the yard. *See id*. at 6-7. We consider each of these arguments in turn.

# 1. Employee vs. Independent Contractor

First, Stacey contends that Yager was acting as Richard's employee. Yager's employment status is the key point of our analysis because of Indiana's "long-standing general rule . . . that a principal is not liable for the negligence of an independent contractor." *Moberly v. Day*, 757 N.E.2d 1007, 1009 (Ind. 2001). As a general rule, an independent contractor controls the method and details of his task and is answerable to the principal as to results only. *Snell v. C.J. Jenkins Enters., Inc.*, 881 N.E.2d 1088, 1091 (Ind. Ct. App. 2008); *see also Walker v. Martin*, 887 N.E.2d 125, 131 (Ind. Ct. App. 2008), *reh'g denied, trans. denied*. Whether one acts as an employee or an independent contractor is generally a question for the finder of fact. *Snell*, 881 N.E.2d at 1091. If the significant underlying facts are undisputed, however, the Court may properly determine a worker's classification as a matter of law. *Id*.

For purposes of determining whether an individual's status is that of an employee or an independent contractor, the Indiana Supreme Court has employed a ten-factor analysis:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*Moberly*, 757 N.E.2d at 1010 (citing Restatement (Second) of Agency § 220 (1958)). We consider all factors, and no single factor is dispositive. *Id.*

[12] Here, Stacey puts particular emphasis on factors (a) and (e) in support of her contention that Yager was acting as Richard's employee. Stacey notes that the

issue of "control" is given special importance in the evaluation process: "Control or the right to control is important and in many situations determinative." Appellant's Br. p. 10 (citing *Carter v. Prop. Owners, Ins. Co.*, 846 N.E.2d 712, 714 (Ind. Ct. App. 2006)). In arguing that Richard exercised control over the details of Yager's work, Stacey points to the following: Richard provided the trailer and determined its placement on the front lawn, he provided a tarp that was placed on the lawn around the trailer, he told the workers to clean up after themselves,[2] and he hired and paid Yager's assistant directly.

[13] Richard argues, however, that Yager was in control of the roofing work being done on the Roosevelt Drive house, and cites to the following colloquy from Yager's deposition:

> Q: . . . When you got over to the house did you go up on a ladder and then take a look at it?
>
> A: Yes, we both did.

---

2 Stacey writes in her brief that Richard "instructed the workers on the disposal of the roofing debris." Appellant's Br. p. 11. In support of this contention, Stacey cites Richard's deposition: when asked if he had had any conversation with Yager or his assistant about how the workers should dispose of the roofing materials so as to minimize any danger, Richard replied "I don't recall. I do feel like I probably told them that they need to be careful, get all the roofing on the trailer . . . Clean up after they're done." Appellant's Br. p. 12 (citing Appellant's App. p. 181).

* * * * *

Q: When you got up there to look at it, did you need Richard for you to be able to decide what needed to be done to fix the problem?

A: No.

Q: Okay. Did you need Richard to tell you how to do the work while you were doing the work?

A: No.

Q: Did you consider it to be your role to do all of the roofing work, both tear-off and the replacement of the materials that you've described?

A: Yes.

Q: That was a job that was in your control?

A: And trusted to me, yes.

Q: Okay. And did you consider, also, that this part of the scope of the work that you were contracted to do included in the $300 was cleanup of the debris and materials?

A: It was to keep it contained, yes.

Appellant's App. p. 108.

[14] In his deposition, Yager was asked, "Had he told you to do something differently, would you have done it differently?" *Id.* at 104. Yager responded:

"I would have had to have assessed that, what he was telling me. If it was something that he had experienced and it was for the better of the application, yes." *Id.*

In Richard's deposition, the following testimony was elicited:

> Q: . . . [B]eyond hiring [Yager] or [the assistant] to do the work, did you actually tell them how to do the work?
>
> A: No.
>
> Q: Did you leave it up to them to determine how the work would be done?
>
> A: Yes.

*Id.* at 59.

Given this deposition testimony, we cannot say that the information Stacey cites in support of her contention that Richard exercised control over the project raises a genuine issue of material fact as to whether he was acting as an employee rather than an independent contractor.

The other factor of the *Moberly* analysis on which Stacey relies is (e)—whether Richard supplied the instrumentalities, tools, and place of work for Yager—and she points out that Richard provided a compressor, roofing materials, and (again) a trailer and tarp. *See* Appellant's Br. p. 13; *see also Moberly*, 757 N.E.2d at 1010. "[I]t is particularly significant if an employer provides tools or instrumentalities of substantial value." *Moberly*, 757 N.E.2d at 1012.

[18]    Regarding the materials he supplied, Richard testified as follows:

> Q: Who chose the materials for the rubber roofing and the re-felt?
>
> A: [Yager] helped me figure out what we needed for it.
>
> Q: And you paid for it?
>
> A: That's correct.
>
> Q: Okay. . . .
>
> A: I had some of the materials already.
>
> Q: What materials did you have already?
>
> A: I had a little bit of felt and the rubber roofing.
>
> Q: How was it that you had a little bit of felt and rubber roofing?
>
> A: I pick up a lot of materials that are left on job sites and whatever and it's left over products and so I had some 30 pound felt and I had a piece of rubber roofing that I had picked up, I don't know, six months prior to that and it was large enough to do that roof up there.
>
> Q: These are materials that had been abandoned at construction sites –
>
> A: That's correct.
>
> Q: -- that you just picked up?
>
> A: Yes, sir.

Q: Were any of your tools used in the roofing work?

A: I believe we used my compressor.

Appellant's App. p. 52.

[19] Thus, it seems clear from this testimony that Yager was not really acting as an employee using his employer's tools; rather, Richard was simply supplying whatever materials he had so that Yager could perform the project in the most cost-effective way possible. Richard provided the tarp and trailer, but he did not exercise control over the details of the roofing-debris cleanup; indeed, he testified that although he hired Yager and the assistant, he did not tell them how to do the work. *See id*. at 59. When asked whether he had had any conversation with Yager and the assistant about how he wanted them specifically to dispose of the materials that were coming off the roof, Richard testified: "I don't recall. I do feel like I probably told them that they need to be careful, get all the roofing on the trailer. . . . Clean up after they're done." *See id*. at 53. This type of general admonition does not rise to the level of exercising "control" over the clean-up of the roofing debris. *See Moberly*, 757 N.E.2d at 1010.

[20] Stacey does not discuss any of the other factors of the employee vs. independent contractor analysis, but we note that they further support the conclusion that Yager was acting as an independent contractor. The undisputed evidence shows that Yager was an experienced roofer working independently on a short-term basis for a lump sum payment. Because the significant underlying facts

are undisputed, based on the analysis above we find as a matter of law that Yager was acting as an independent contractor and not as an employee. *See id.* at 1009.

## 2. Duty of Reasonable Care Where Act Will Probably Cause Injury

[21] Next, Stacey contends that even if Yager was acting as an independent contractor, Richard still had a duty of reasonable care under one of the five exceptions to the general rule of the principal not being liable for the actions of an independent contractor. *See Bagley v. Insight Commc'ns Co., L.P.*, 658 N.E.2d 584 (Ind. 1995); *see also Louisville Cement Co. v. Mumaw*, 448 N.E.2d 1219 (Ind. Ct. App. 1983), *reh'g denied*. The five exceptions are: (1) where the contract requires the performance of intrinsically dangerous work; (2) where the principal is by law or contract charged with performing the specific duty; (3) where the act will create a nuisance; (4) where the act to be performed will probably cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal. Stacey argues that the fourth exception— where the act to be performed will probably cause injury to others unless due precaution is taken to avoid harm—applies in this case and that the focus of this exception is on the foreseeability of the specific harm. *See Bagley*, 658 N.E.2d 584; *see also Carie v. PSI Energy, Inc.*, 715 N.E.2d 853 (Ind. 1999).

[22] The essence of this exception is the foreseeability of the peculiar risk involved in the work and of the need for special precautions. The exception applies where,

*at the time of the making of the contract*, a principal should have foreseen that the performance of the work or the conditions under which it was to be performed would, absent precautionary measures, probably cause injury.

[23] Application of this fourth exception to the plaintiff's claim thus requires an examination of whether, at the time [a party] was employed as an independent contractor, there existed a peculiar risk which was reasonably foreseeable and which recognizably called for precautionary measures. *Bagley*, 658 N.E.2d at 588 (internal citations omitted) (emphasis added). Additionally, our Supreme Court has required some precision of "factual congruence between that which was foreseeable and that which ultimately occurred." *See Carie*, 715 N.E.2d at 857-58. Finally, even when the exception is applied for the benefit of third persons, where strong social reasons support its application, the exception is strictly construed:

> It is apparent that virtual abrogation of the general doctrine of an employer's non-liability for acts of an independent contractor or the latter's servants would result if the law were to predicate, under all circumstances, the existence of an absolute duty on the employer's part to guard against all accidents, probable as well as improbable, that might happen to the damage of third persons while stipulated work is being performed by an independent contractor. If, therefore, recovery is sought on the ground that an employer should have adopted certain precautionary measures for the purpose of preventing the injury complained of, the action must fail unless the plaintiff can at least show that in view of the nature of the work and the conditions under which it was to be executed, *the defendant should have foreseen that the actual catastrophe which occurred was likely to happen if those precautionary measures were omitted*.

*Hale v. Peabody Coal Co.*, 168 Ind. App. 336, 343 N.E.2d 316, 324 (1976) (citing 41 Am. Jur. 2d, Independent Contractors, § 35) (emphasis added).

[24] Here, Stacey argues that "[n]ot only does the designated record show that [Richard] foresaw a risk that if the cleanup of the debris was not done in a reasonable manner that someone could be injured by stepping on a roofing nail left in the yard, but it shows that [Stacey] actually stepped on a roofing nail in the yard in an incident on Super Bowl Sunday." *See* Appellant's Br. p. 15. But Richard argues that the fourth exception only applies where the "peculiar risk" was foreseeable at the time the independent contractor—in this case, Yager—was hired to perform the work. *See Carie*, 715 N.E.2d at 856. Richard further contends that there must be a showing of not merely the *possibility* of harm, but of the *probability* of harm. *See Red Roof Inns, Inc. v. Purvis*, 691 N.E.2d 1341, 1346 (Ind. Ct. App. 1998), *trans. denied*; *see also Bagley*, 658 N.E.2d at 586. Thus, the question becomes: could Richard have foreseen at the time he hired Yager to perform the roofing work that, absent precautionary measures, the actual catastrophe which occurred was likely to happen if those precautionary measures were omitted?

[25] We conclude that the answer to that question is no: Richard is not liable on these grounds. First, Stacey's actual injury was not a probable, foreseeable risk at the time Yager was hired to do the work. And second, Richard *did* take precautionary measures—he supplied a trailer and a tarp to collect roofing debris. Obviously these items were not totally effective in collecting all of the roofing nails, but as Yager—an experienced roofer—testified, "I don't know

that you always get all the nails." Appellant's App. p. 106. Therefore, we find that the fourth exception to the general rule of non-liability for the torts of independent contractors is inapplicable here, because at the time Richard hired Yager, the contracted work did not present the foreseeable, peculiar probability that an injury such as Stacey's would result, and Richard could not have been expected to foresee the injury which actually occurred. *See Bagley*, 658 N.E.2d at 588.

## 3. Assumption of Duty

[26] Finally, Stacey argues that there is a genuine issue of material fact as to whether Richard assumed a duty of care to clean up the roofing debris. In order for a lessee to recover on a theory of negligence, she must show a duty on the part of the lessor and a breach of that duty. *Frost v. Phenix*, 539 N.E.2d 45, 47 (Ind. Ct. App. 1989). A landlord is not liable for a tenant's personal injuries stemming from the defective premises unless he expressly agrees to repair and is negligent in doing so. *Id*. This is the rule when the landlord leases the entire premises to the tenant, such as a single-family residence, and the injury occurs on the demised premises. *Id*.

[27] As support, Stacey quotes at length from a 1928 case in which the lessor agreed to repair the roof of a building in which lessee was operating a business, although lessor was not contractually obligated to do so in the lease. *See Robertson Music House, Inc. v. Wm. H. Armstrong Co*., 90 Ind. App. 413, 163 N.E. 839 (1928). In that case, the lessor/landlord "promised and agreed to see that

the roof should be promptly put in good condition so that it would not leak" and thereafter attempted to repair the roof but did so in a careless and negligent manner. *See id*. at 839.

[28] Here, Stacey asserts that Richard "agreed to take care of the debris problem." Appellant's Br. p. 17. But, as Richard points out, there was no explicit promise or agreement made to Stacey that he would do so. Richard did go to the house to look around and pick up debris, and he repeatedly instructed Yager to clean up the roofing debris. *See, e.g.*, Appellant's App. p. 53 ("Q: Did you have any conversation with [] Yager . . . about how you wanted them specifically to dispose of the materials that were coming off of the roof . . .? A: I don't recall. I do feel like I probably told them that they need to be careful, get all the roofing on the trailer. . . . Clean up after they're done."), 54 ("I do remember sending the guys over to clean up and I'm referring to [Yager], specifically."), 55 ("I personally looked around myself and picked up pieces of debris . . . and then asked [Yager] to . . . ."). But even considered cumulatively, these acts do not rise to the level of an express agreement to remedy the problem. *See Frost*, 539 N.E.2d at 47. Therefore, we find that Richard did not assume a duty to Stacey such that he is liable for her personal injuries.

[29] Because Stacey has not met her burden of persuading us that the trial court's granting of summary judgment was erroneous, *see Hughley*, 15 N.E.3d at 1003, and we find that there is no genuine issue of material fact and likewise no legal basis for finding Richard liable to Stacey, we affirm the trial court's grant of summary judgment in favor of Richard.

Affirmed.

BAKER, J., and RILEY, J., concur.